```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

**JOSEPH CARLOS JONES,**

                    **Plaintiff,**

      v.                              CASE NO. 06-3084-SAC

**WYANDOTTE COUNTY**
**SHERIFF'S DEPARTMENT, et al.,**

                    **Defendants.**

### MEMORANDUM AND ORDER

This complaint was filed pro se pursuant to 42 U.S.C. 1983 by an inmate of the Wyandotte County Detention Center, Kansas City, Kansas (WCDC). Plaintiff seeks damages for alleged denial of necessary medical treatment and prescribed diet, asserting he has been subjected to cruel and unusual punishment. Plaintiff has also filed motions for leave to proceed without prepayment of fees (Doc. 2) and for appointment of counsel (Doc 3).

The court issued an order directing plaintiff to submit materials to adequately plead full and total exhaustion of administrative remedies on each of his claims in compliance with 42 U.S.C. 1997e(a). Plaintiff has since filed a response (Doc. 4) and a supplement to his motion for appointment of counsel (Doc. 5). Having considered all the materials filed, the court finds as follows.

### CLAIMS

Plaintiff's claims may be summarized as: (1) failure to provide previously prescribed medication which worked, and substituting a medication which has caused pain and an infection

(2) failure to provide immediate medical attention on more than one occasion when he notified guards he had blood in his stool and was in severe pain, (3) failure of Aramark to provide him with a medically prescribed, high protein/high calorie diet.

More specifically, as count one of his complaint, plaintiff alleges that defendants failed to provide proper emergency and standard medical treatment. As factual support for this count, he alleges he complained about bleeding to officers on duty, and they "broke protocol by failing to call a code 900." He alleges he bled a large amount in his cell, and no one would come to help him. In January, 2006, he reported a medical problem to "Nurse Johnathan" in front of "c/o Owens," but was told to fill out a sick call slip, and was not provided with immediate care. On February 7, 2006, "c/o Edler" called to inform medical personnel plaintiff was "bleeding again" but no one ever came to look at him. On February 21, 2006, "c/o Hewitt" logged that plaintiff was bleeding, but never called for medical attention. He provides affidavits from two inmates who recall being told by him of his pain and bleeding, observing him in pain, and no jail or medical personnel responding.

As count two of his complaint, plaintiff claims medical malpractice. As factual support, he alleges generally he has been denied proper medical treatment more than once when officers who were aware he was bleeding either called or did not call for medical attention. He alleges he developed an infection from substituted medication, which was so severe that he could not eat and did not want to move. He generally alleges he submitted sick

call slips and grievances. He exhibits "just a few" of his grievances with his complaint.

As count three, plaintiff generally alleges deliberate indifference, deprivations by policies at the detention center, and cruel and unusual punishment. As factual support, he alleges "Aramark" has refused to follow "doctors orders" to provide him with a high calorie/high protein diet.

Plaintiff generally complains he has suffered pain, mental stress, and lack of sleep as a result. Plaintiff's request for relief is for actual and punitive damages.

**FACTUAL BACKGROUND**

Plaintiff alleges the incidents of which he complains occurred between January 18, 2006 and February 25, 2006. He lists numerous individuals as defendants and states, mostly in conclusory fashion, that they were "involved."

From plaintiff's exhibits, the following factual background appears. On January 24, 2006, plaintiff completed a "Correct Care Solutions, Inc." Sick Call Request form (sick call request) stating the nature of his problem/request as "need to know" dates of prescribed medications and stop dates, as well as "each time call to health services and what for." Plaintiff exhibits no response to this sick call request or follow-up grievance.

On January 27, 2006, a "Medical Diet Order" was issued for plaintiff requiring a "High Protein/High Calorie 3000" diet starting that date and ending upon his release. This order was "refaxed" on February 1, 2006, and included "okay double tray by

3

Dr. Gamble on 3/8/06."

On February 3, 2006, plaintiff completed a Wyandotte County Detention Center Inmate Communication Form (ICF) marked as a "grievance" directed to "grievance officer," which stated he had been denied proper medical treatment; and his prescription had been toyed with, was inadequate, and was causing very bad pain, lack of sleep, and mental stress. He also complained he was losing weight because his diet was not right. He further claimed the problems with his prescription and lack of proper diet had led to an severe infection. He stated he had "continually" sent ICF forms and sick call slips, which had yet to be answered[1], and that officers on all three shifts had "logged" the above complaints. No response to, or appeal of, this grievance is exhibited or described.

On February 24, 2006, plaintiff submitted an ICF "request" to Deputy Elder apparently asking him to confirm that on "the day" plaintiff had complained to Elder of blood in his stool, Elder had called medical services, and no medical personnel had come to see him or sent for him. Also on February 24, 2006, plaintiff sent a ICF "request" to Sgt. Walker asking him to confirm that plaintiff had spoken with Walker "many" times about his "health and diet problems," that Walker had tried to help him, that plaintiff had followed "all steps" and had even filed two grievances and obtained the pad officer log account. Plaintiff complained "things" were getting worse. No response

---

[1] He complained that ICF forms and Sick Call Requests filed by him had not been answered, but the first sick call request exhibited by him was submitted only 10 days earlier on January 24, 2006, and requested information rather than medical care.

4

to, follow-up grievance, or appeal of either of these requests is exhibited.

On February 25, 2006, plaintiff completed a sick call request stating "the new meds are not doing the job," and asking why he had to "keep hurting" so they could experiment when "one drug already works." No response, grievance, or appeal regarding this problem is exhibited.

In sum, plaintiff's exhibits demonstrate that prior to filing his complaint on March 20, 2006, plaintiff submitted two sick call requests, two ICF requests, and one ICF grievance. Plaintiff does not describe the grievance procedure available at the WCDC. However, from the forms exhibited by him it appears an inmate may file an informal request, a grievance, and an appeal. Those levels conform with printed procedures at other Kansas county facilities.

After filing this action, plaintiff submitted four additional ICF requests. On March 30, 2006, he completed an ICF request directed to Sgt. Walker asking him to confirm that plaintiff had that day shown him copies of grievances and sick call forms and copies of logs regarding his bleeding, medications, and diet that were not answered in the "time allowed by policy." Walker responded, "Yes we spoke about your medical concerns." No grievance or appeal is shown to have been filed regarding this request.

In April, 2006, plaintiff filed an ICF request directed to C/O Owens asking him to confirm that in January plaintiff had reported having bad pain and blood in his stool, that he was seen

5

by Nurse Johnathan whom he informed he was not receiving the right medication, Johnathan responded plaintiff would have to "put a sick call in," plaintiff gave a sick call request to Owens, but was not seen by medical staff that day or week. Owens responded on April 3, 2006: "I can verify that to my best memory, the above statement is true." No follow up or appeal of this request is exhibited.

On April 3, 2006, plaintiff completed an ICF request directed to C/O Cambridge asking him to confirm that "Central" had told Cambridge to inform plaintiff he would have to talk to his attorney to get copies released from medical. On April 8, 2006, plaintiff completed an ICF request directed to "Housing Sgt. Hennery" asking why he could not have copies of his medical records. The response on April 8, 2006, was that the staff member had spoken with the medical records clerk who advised that plaintiff would have to have his attorney pick up his records and he would have to sign a release to allow his attorney access to the records. No follow-up grievance or appeal is exhibited.

On April 5, 2006, plaintiff completed an ICF request to Sgt. Sharp asking him to confirm that plaintiff and "the Nurse" had shown Sharp that day that plaintiff was supposed to receive double trays at each meal, and stating Aramark was not sending double trays. Sharp answered, "you and noone else gets double trays." No follow-up grievance or appeal of this request is exhibited.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiff is correct that he is constitutionally entitled to necessary medical attention, and if his condition is sufficiently serious and an emergency, he is entitled to immediate medical attention. Blood in one's stool and severe pain are generally considered serious symptoms. If emergency medical care were not made available to an inmate at the WCDC for a sufficiently serious condition, that inmate may eventually state a claim and be entitled to relief in federal court. However, plaintiff is required by federal law to seek relief, in the first instance, through administrative channels at the county detention center before filing a federal complaint. One purpose of exhaustion is to afford corrections officials time and opportunity to address complaints internally. <u>Porter v. Nussle</u>, 534 U.S. 516, 525 (2002). The internal review might result in corrective action being taken and obviate the need for litigation, or at least filter out some frivolous claims or provide an administrative record which would facilitate adjudication. <u>Id</u>.

The United States Supreme Court has held that the exhaustion requirement in 42 U.S.C. § 1997e(a) is "mandatory" for all "inmate suits about prison life." <u>Steele v. Federal Bureau of Prisons</u>, 355 F.3d 1204, 1207 (10th Cir. 2003), *citing* <u>Porter</u>, 534 AT 524. Thus, resort to a prison grievance process must precede resort to federal court. <u>Steele</u>, 355 F.3d at 1207, <u>Porter</u>, 534 U.S. at 529. Section 1997e(a) requires exhaustion of "all available remedies." <u>Steele</u>, 355 F.3d at 1208.

**<u>DISCUSSION</u>**

The Tenth Circuit has stated, in the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under Section 1997e(a). Dismissal is without prejudice so that the inmate "can cure the defect simply by exhaustion" and then may re-institute his suit, if administrative remedies fail to afford him the desired relief. Steele, 355 F.3d at 1213. A plaintiff whose claims involve numerous incidents, must bring each of those incidents to the attention of prison officials in an orderly fashion at every available level of the grievance process. Ross v. County of Bernalillo, 365 F.3d 1181, 1188 (10th Cir. 2004).

From plaintiff's own exhibits, it appears he presents at least some claims in his complaint that have not been fully exhausted. Id., at 1188. The presence of any unexhausted claim requires this court to dismiss the action in its entirety, without prejudice. Id., at 1189.

The court has carefully considered all the documents and facts plaintiff has provided regarding his exhaustion of administrative remedies. While plaintiff exhibits many form requests, he often does not show a sufficient relationship between his requests and the claims raised in his lawsuit. Steele, 355 F.3d at 1210. His attempts to gather information, whether for this lawsuit or not, do not constitute exhaustion of administrative remedies to obtain necessary medical attention, or prescribed medication and diet. As noted, plaintiff does not exhibit or describe the response to his first sick call request,

8

and the content was nothing more than a request for information regarding his medications and past visits to health services. His second sick call request actually raised his claim regarding his medication, but there is no showing he followed up by submitting a formal grievance or appeal. Plaintiff's ICF requests in February, March, and April only made statements and asked the guards they were directed to for confirmation of those statements. While the statements related to plaintiff's claims, he did not complain of particular actions or inactions on certain dates, state names of persons who participated in those actions or inactions, and seek a resolution other than confirmation of his statements. From plaintiff's exhibits it appears that his only formal "grievance" was the one filed on February 3, 2006, in which he did raise his claims. However, he again failed to exhibit or describe a response to this grievance or an appeal. The court cannot find from the facts alleged in the complaint or these exhibits that plaintiff has met the threshold statutory requirement of adequately pleading total exhaustion of administrative remedies.

While the court has considered ordering preparation of a Martinez report requiring defendants to show if there have been additional administrative grievances, responses, and appeals filed which plaintiff has simply failed to exhibit; the burden under current federal law is squarely on plaintiff to demonstrate full and total exhaustion on each of his claims.

Requiring a Martinez report at this juncture would also necessitate issuance of summons to defendants who should not have

9

to answer to this lawsuit. Plaintiff has named numerous defendants, several of whom are not alleged to have personally participated in the incidents of which he complains. Several are named based upon their supervisory capacity, which is not a valid basis for monetary liability in a civil rights action. Moreover, plaintiff names Aramark Food Services; Correct Care Solutions, Inc.; and the Wyandotte County Sheriff's Department. These entities are not "persons" suable under 42 U.S.C. 1983. Plaintiff must name only individuals as defendants who actually participated in the acts of which he complains and allege facts to show their personal participation.

In sum, the court finds that plaintiff has not adequately demonstrated total and full exhaustion of administrative remedies on all three of his claims, even though he might have a valid legal claim for relief. Thus, the court feels compelled by the PLRA and <u>Steele</u> to dismiss this action for failure to adequately plead exhaustion. The dismissal is without prejudice, so that plaintiff may eventually file another civil complaint on his claims if his complaints are not resolved administratively. He is also advised to name only proper defendants in any future complaint.

**IT IS THEREFORE BY THE COURT ORDERED** that this action is dismissed, without prejudice, for failure to adequately plead exhaustion of administrative remedies.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Doc. 3), and motion for leave to proceed without prepayment of fees (Doc. 2) are denied as moot.

**IT IS SO ORDERED.**

Dated this 22nd day of June, 2006, at Topeka, Kansas.

                                            <u>s/Sam A. Crow</u>
                                            U. S. Senior District Judge